FILED ✓          RECEIVED
ENTERED ____    SERVED ON
COUNSEL/PARTIES OF RECORD

FEB - 3 2011

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

GILBERT JAY PALIOTTA,                    )     3:09-cv-0194-RCJ (RAM)
                                         )
                    Plaintiff,           )     **REPORT AND RECOMMENDATION**
                                         )     **OF U.S. MAGISTRATE JUDGE**
          vs.                            )
                                         )
BROOKS, et al.,                          )
                                         )
                    Defendants.          )
_____)

          This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.  Before the court is Defendants' Motion to Dismiss.  (Doc. #23.)[1]   Plaintiff has opposed (Doc. #25), and Defendants have replied (Doc. # 26).  After a thorough review, the court recommends that Defendants' motion be granted, as set forth below.

## I. BACKGROUND

          At all relevant times, Plaintiff Gilbert Jay Paliotta (Plaintiff) was in the custody of the Nevada Department of Corrections (NDOC).  (Pl.'s First Am. Compl. (Doc. #17) 3.)  Plaintiff is currently an inmate at Ely State Prison (ESP).  (*Id.*)  Plaintiff, a *pro se* litigant, brings this action pursuant to 42 U.S.C. § 1983 and the Nevada Constitution.  (*Id.* at 1.)

_____

[1]       Refers to the court's docket number.

1    Defendants move to dismiss Plaintiff's First Amended Complaint on the basis that he

2    previously filed an action based on the same facts, Case No. 3:08-cv-00050-BES-VPC

3    (Paliotta I), which was dismissed with prejudice, and Plaintiff failed to prosecute an appeal.

4    (Defs.' Mot. to Dismiss (Doc. # 23) 2, n. 1.) Therefore, it is necessary to briefly summarize

5    both Paliotta I and Plaintiff's current lawsuit (Paliotta II).

6    **A.    PALIOTTA I**

7    Paliotta I was originally filed in the Seventh Judicial District Court of the State of

8    Nevada, in and for White Pine County, and was subsequently removed to federal court.

9    (Paliotta I Doc. # 7.) While Plaintiff's complaint was submitted on January 24, 2008, it was

10   deemed filed on October 17, 2008. (Paliotta I Doc. # 1, Doc. # 3, Doc. # 6, and Doc. # 7.) The

11   complaint named defendants Eldon K. McDaniel, Warden of ESP, and Howard L. Skolnik,

12   Director of NDOC. (Paliotta I Doc. #7 at 2.) Plaintiff sought damages as well as declaratory

13   and injunctive relief. (*Id.* at 3.) Plaintiff claimed violations of the First, Fifth, Eighth, and

14   Fourteenth Amendments of the United States Constitution as well as the Nevada Constitution.

15   (Doc. # 7 3-4.)

16   The alleged constitutional violations relate to Plaintiff's housing status in disciplinary

17   and administrative segregation as well as his classification to High Risk Potential (HRP)

18   status, and denial of reclassification and transfer to general population. (Paliotta I Doc. # 7

19   4-8.) The allegations span the time period from August 28, 1998 through February 22, 2007.

20   (*Id.*)

21   On October 17, 2008, an order issued dismissing Plaintiff's complaint with prejudice

22   for failure to state a claim. (Paliotta I Doc. # 6 5.) The court determined that Plaintiff did not

23   state a due process claim concerning his segregated housing status and HRP designation. (*Id.*

24   at 4.) Plaintiff also asserted that his Eighth Amendment rights were violated due to his

25   housing and classification status, but the court found that he failed to allege facts indicating

26   that he was denied the "minimal civilized measure of life's necessities," or that he was exposed

27   to a substantial risk of harm as a result of deliberate indifference. (*Id.*) The court further

28                                        2

1    found that Plaintiff did not set forth facts to indicate that his segregated housing status or

2    classification was discriminatory. (*Id.*) Finally, the court found that Plaintiff failed to allege

3    facts indicating that the classification and housing placement decisions were based upon a

4    retaliatory motive related to the exercise of his First Amendment rights. (*Id.* at 5.)

5         On October 20, 2008, a judgment was entered. (Paliotta I Doc. # 8.) On November

6    14, 2008, Plaintiff filed a Notice of Appeal. (Paliotta I Doc. # 9.) On December 22, 2008, the

7    Ninth Circuit issued a time schedule order making Plaintiff's opening brief due December 29,

8    2008, and warning that failure to comply would result in automatic dismissal of the appeal

9    pursuant to Ninth Circuit Rule 42-1. (Paliotta I Doc. # 12.) On January 27, 2009, the Ninth

10   Circuit issued an order dismissing the appeal for failure to file the opening brief. (Paliotta I

11   Doc. # 13.) The Order on Mandate was filed on January 29, 2009. (Paliotta I Doc. # 14.)

12   **B.   PALIOTTA II**

13        Plaintiff's complaint in Paliotta II was deemed filed on March 29, 2010. (Paliotta II

14   Doc. #15 and Doc. # 16.)  This complaint was also originally filed in the Seventh Judicial

15   District Court of the State of Nevada, in and for White Pine County. (Paliotta II Doc. # 15 1.)

16   The complaint alleged  violation of Plaintiff's constitutional rights under the First, Fourth,

17   Fifth, Eighth, and Fourteenth Amendments of the United States Constitution, the Nevada

18   Constitution, as well as various claims under the Nevada Revised Statutes (NRS). (*Id.*)

19   Plaintiff named as Defendants the "Nevada Department of Prisons, Officially as a State

20   Political Subdivision of Defendant Nevada," as well as: (1) Eldon K.  McDaniel, Warden at

21   ESP; (2) Howard L.  Skolnik, Director of NDOC; (3) Adam Endel, Associate Warden of

22   Programs at ESP; (4) D.  Brooks, Associate Warden of Operations at NSP; and (5) Gregory

23   Cox, Assistant Director at NDOC. (Paliotta II Doc. # 16 1, 4-6.)  Plaintiff once again seeks

24   damages as well as declaratory and injunctive relief. (Paliotta II Doc. # 16.)

25        The court issued a screening order on March 20, 2010, dismissing Defendant "Nevada

26   Department of Prisons" with prejudice. (Paliotta II Doc. # 15 3-4.) The court pointed out the

27   gravamen of Plaintiff's complaint, as in Paliotta I, concerned his housing in administrative

28                                              3

1  segregation and classification. (*Id.* at 3.) Although Plaintiff alleged five causes of action, his
2  constitutional claims were reiterated throughout his complaint, and were therefore addressed
3  by their substantive nature. (*Id.* at 4.) The order recognized that Plaintiff's state law claims
4  fall within the supplemental jurisdiction of the court pursuant to 28 U.S.C. § 1367. (*Id.*)
5  Plaintiff asserted claims under the First Amendment (free exercise of religion, retaliation, and
6  access to courts), Fifth and Fourteenth Amendments (due process and equal protection); and
7  the Eighth Amendment. (*Id.* at 4-11.) In its screening order, the court dismissed Plaintiff's
8  First Amendment and equal protection claims, with leave to amend, and allowed his
9  procedural due process and Eighth Amendment claims to proceed. (*Id.* at 11.)

10  On April 19, 2010, Plaintiff filed his First Amended Complaint naming Defendants
11  McDaniel, Skolnik, Endel, Brooks, and Cox. (Paliotta II Doc. # 17.) Plaintiff's allegations still
12  center around his segregated housing status and classification, and he asserts violations of his
13  rights under the First, Fifth, Eighth, and Fourteenth Amendments of the United States
14  Constitution, the Nevada Constitution, various administration regulations, institutional and
15  operational procedures, and provisions of the NRS. (*Id.* at 5-6.) He included some additional
16  facts, which appear to give rise to potential new claims arising after the filing of Paliotta I,
17  including an Eighth Amendment claim related two alleged assault incidents and a First
18  Amendment access to courts claim relating to the alleged confiscation of legal papers during
19  a February 2008 search of his cell. (*Id.* at 12-13.) Finally, in comparison to his complaint in
20  Paliotta I, Plaintiff includes additional factual allegations regarding his claims concerning his
21  segregated housing status and the failure to transfer him to general population. (*Id.* at 13-15.)
22  These allegations pick up where Paliotta I left off, on February 27, 2007, and continue through
23  January 15, 2009. (*Id.*)

24  ## II. LEGAL STANDARD

25  "A dismissal under Fed.R.Civ.P. 12(b)(6) is essentially a ruling on a question of law."
26  *North Star Int'l v. Ariz. Corp. Comm.*, 720 F.2d 578, 580 (9th Cir. 1983) (citation omitted).
27  At minimum, a plaintiff should state "enough facts to state a claim to relief that is plausible

28                                                4

1  on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The complaint need not

2  contain detailed factual allegations, but it must contain more than "a formulaic recitation of

3  the elements of a cause of action." *Id.* at 555.  The Rule 8(a) notice pleading standard requires

4  the plaintiff to "give the defendant fair notice of what the . . . claim is and the grounds upon

5  which it rests." *Id.* (internal quotations and citation omitted).  The "plausibility standard"

6  does not impose a "probability requirement," rather, it requires a complaint to contain "more

7  than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct.

8  1937, 1949 (2009).  "Where a complaint pleads facts that are merely consistent with a

9  defendant's liability, it stops short of the line between possibility and plausibility of

10  entitlement to relief." *Id.*

11        In considering a motion to dismiss for failure to state a claim upon which relief may

12  be granted, all material allegations in the complaint are accepted as true and are to be

13  construed in a light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*,

14  80 F.3d 336, 337-38 (9th Cir. 1996) (citation omitted).  However, this tenet is "inapplicable

15  to legal conclusions." *Iqbal*, 129 S.Ct. at 1949.  "Threadbare recitals of the elements of a cause

16  of action, supported by mere conclusory statements, do not suffice."  *Id.*  "While legal

17  conclusions can provide the framework of a complaint, they must be supported by factual

18  allegations." *Id.* at 1950.  Additionally, "only a complaint that states a plausible claim for

19  relief survives a motion to dismiss." *Id.*  A court should assume the veracity of well-pleaded

20  factual allegations and "then determine whether they plausibly give rise to an entitlement to

21  relief." *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the

22  mere possibility of misconduct, the complaint has alleged – but it has not shown – that the

23  pleader is entitled to relief."  *Id.* (citations, brackets, and quotation omitted).  Thus, a

24  complaint may be dismissed as a matter of law for "(1) lack of a cognizable legal theory or (2)

25  insufficient facts under a cognizable legal claim." *Smilecare Dental Group v. Delta Dental

26  Plan*, 88 F.3d 780, 783 (9th Cir 1996) (quoting *Robertson v. Dean Witter Reynolds, Inc.*, 749

27  F.2d 530, 534 (9th Cir. 1984)).

28                                             5

1      A *pro se* plaintiff's complaint must be construed liberally and can only be dismissed

2 where it appears certain that the plaintiff would not be entitled to relief. *Ortez v. Washington*

3 *County, State of Or.*, 88 F.3d 804, 807 (9th Cir. 1996).  Although allegations of a *pro se*

4 complaint are held to a less stringent standard than formal pleadings drafted by a lawyer,

5 *Haines v. Kerner*, 404 U.S. 519 (1972), sweeping conclusory allegations will not suffice. *Leer*

6 *v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988).

7 **III.  DISCUSSION**

8      Defendants move to dismiss Paliotta II on the ground that it is barred by the doctrine

9 of res judicata because Paliotta I, based on the same facts, was dismissed with prejudice and

10 Plaintiff failed to prosecute an appeal. (Paliotta II Doc. # 23 2.) Plaintiff argues: (1) there are

11 significant factual differences between this case and the case he previously filed; (2) the first

12 case he filed was filed in federal court and the second case was filed in state court and then

13 removed to federal court which should create an exception to the res judicata doctrine; and

14 (3) there was no judgment on the merits in the first case. (Paliotta II Pl.'s Opp. to Defs.' Mot.

15 to Dismiss (Doc. # 25) 2-3.)

16      Preliminarily, with respect to Plaintiff's item (2), Plaintiff's argument is misplaced

17 because Paliotta I and Paliotta II were both filed and state court and properly removed to

18 federal court.

19 **A.    JUDICIAL NOTICE**

20      Defendants' request that the court take judicial notice of the filings in Paliotta I should

21 be granted.  Defendants are correct that "[a] court may take judicial notice of 'matters of

22 public record' without converting a motion to dismiss into a motion for summary judgment."

23 *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)(citation omitted); *see also*

24 *Shaw v. Hahn*, 56 F.3d 1128, 1129 n. 1 (9th Cir. 1995)(taking judicial notice of records to

25 determine preclusive effect of earlier case).

26 / / /

27 / / /

28 6

## B.   CLAIM PRECLUSION

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). When dealing with the preclusive effect of a federal court judgment, federal common law applies. *Id.* at 891. Here, Defendants have presented the issue of claim preclusion, which provides that a final judgment on the merits of an action precludes the parties from relitigating all issues that were or could have been raised in that action. *Id.* at 892; *see also Rein v. Providian Financial Corp.*, 270 F.3d 895, 898-99 (9th Cir. 2001). Res judicata "protects 'against the expense and vexation attending multiple lawsuits, conserve[s] judicial resources, and foste[rs] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Taylor*, 553 U.S. at 892 (citation omitted). Claim preclusion is appropriate where: (1) there was a final judgment on the merits, (2) the same claim or cause of action was involved in both suits, and (3) the parties are identical or in privity. *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001). It is not entirely clear which preclusion law-federal or state-to apply to a federal court's judgment on state-law claims through its exercise of supplemental jurisdiction. *See* 18B Charles Alan Wright, Arthur R. Miller & Edward J. Cooper, *Federal Practice and Procedure* § 4466 (2d ed.)(noting that it may be argued that supplemental jurisdiction of state created rights presents a stronger justification for following federal rules of res judicata but postponing any conclusion on the matter). However, for purposes of this matter, this question is immaterial because Nevada uses the same test as does the federal court for determining whether claim preclusion applies. *See Five Star Capital Corp v. Ruby*, 194 P.3d 709, 713 (Nev. 2008).

### 1.   Final Judgment on the Merits

Fed.R.Civ.P. 41(b) provides that any dismissal, except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19, operates as a final judgment on the merits. Dismissal of an action with prejudice is considered a final judgment on the merits. *Headwaters Inc. v. U.S. Forest Service*, 399 F.3d 1047, 1092 (9th Cir. 2005). Dismissal for

1   failure to state a claim under Fed.R.Civ.P. 12(b)(6) is also considered a final judgment on the

2   merits. *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981); *see also Nnachi*

3   *v. City of San Francisco*, 2010 WL 3398545 at *5-6 (N.D. Cal. 2010)(action dismissed for

4   failure to state a claim serves as final judgment on the merits for res judicata purposes).

5   Because none of exceptions are applicable here, the court finds there was a final judgment on

6   the merits in Paliotta I.

7          **2.     Identity of Claims**

8          Defendants argue that the two cases allege violations of nearly the same rights based

9   on almost all the same facts and asserting the same essential claim- the challenge of Plaintiff's

10  HRP classification and the refusal to transfer him from segregated housing to general

11  population, and are therefore based on the same "transactional nucleus of facts." (Paliotta II

12  Doc. # 23 4-5, Defs.' Reply (Doc. # 26) 3.) Plaintiff argues that the claims alleged in the two

13  complaints are different. (Paliotta II Doc. # 25 2-3.)

14         The claims asserted in the two actions are by and large the same, however, the court

15  recognizes that Plaintiff has included some additional allegations in Paliotta II that were not

16  alleged in Paliotta I. Therefore, the court must determine whether there is claim identity such

17  that the Defendants are entitled to preclusion. *See Owens*, 244 F.3d at 713. To determine

18  whether Paliotta II involves the same claims as Paliotta I, the court considers the following

19  factors:

20             (1) whether rights or interests established in the prior judgment would be
               destroyed or impaired by prosecution of the second action; (2) whether
21             substantially the same evidence is presented in the two actions; (3) whether the
               two suits involve infringement of the same right; and (4) whether the two suits
22             arise out of the same transactional nucleus of facts.

    *Constantini v. Trans World Airlines*, 681 F.2d 1199, 1201-1202 (9th Cir. 1982) (citation
23
    omitted). The Ninth Circuit has recognized that the last *Constantini* factor, whether the two
24
    suits arise out of the same transactional nucleus of facts, is the most important. *Id.* at 1202;
25
    *see also Headwaters Inc.*, 399 F.3d at 1052.
26
    / / /
27

28                                              8

As to the fourth factor, "[t]he fact that res judicata depends on an 'identity of claims' does not mean that an imaginative attorney [or litigant] may avoid preclusion by attaching a different legal label to an issue that has, or could have been litigated." *Tahoe Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 322 F.3d 1064, 1077-78 (9th Cir. 2003). "Newly articulated claims based on the same nucleus of facts may still be subject to res judicata finding if the claims could have been brought in the earlier action." *Id.* at 1078. "It is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could have been brought." *Id.* (citation omitted).

Generally, a claim that arose after the filing of a complaint in a prior proceeding will not be barred by claim preclusion based on the prior proceeding. *See Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322 (1955) (holding that res judicata does not bar litigation of similar claims based on events that occurred subsequent to a prior judgment); *see also Carstarphen v. Milsner*, 594 F.Supp.2d 1201, 1209-11 (D.Nev. 2009)(holding that claim preclusion did not bar similar claims that arose from events that occurred after the plaintiff filed his prior complaint); *Havas v. Engebregson*, 633 P.2d 682, 684 (Nev. 1981)("If the legal malpractice cause of action had not yet accrued, it could not have been included in the first...litigation, and it would not be barred by the doctrine of res judicata in the subsequent suit").

Claim preclusion, however, may bar claims based on later events in some cases. *Carstarphen*, 594 F.Supp.2d at 1209-10. "[C]laim preclusion extends to claims in existence at the time of the filing of the original complaint in the first lawsuit and any additional claims actually asserted by supplemental pleading." *Id.* at 1210. "Contexts where a second claim depends on the allegation that a series of wrongful acts constituted a single scheme, rather than merely later actions of the same type, are another such example" of claims that arise after filing but are nevertheless barred by claim preclusion. *Id.*

In Paliotta I, Plaintiff asserted the following claims: (1) his due process rights were violated after having been classified as HRP and placed in disciplinary and administrative

9

segregation, and his requests for reclassification and transfer to general population were denied (Paliotta I Doc. # 7 4-9, *see also* Doc. # 6 4); (2) his Eighth Amendment rights were violated due to his segregated housing status and classification (*Id.*); (3) his housing placement and classification were discriminatory in violation of his equal protection rights (*Id.*); and (4) his classification and housing placement were retaliatory. (*Id.*)  Plaintiff also asserts that his rights were violated under the Nevada constitution and that Defendants violated their own internal regulations and procedures, as well as the NRS. (*Id.* at 3-4, and 8-9 at ¶¶ 29-30.) Plaintiff also included allegations that he was denied access to legal research as well as religious services as a result of his housing status. (*Id.* at ¶ 31.)

In Paliotta II, while Plaintiff's claims are not clearly articulated, it appears that Plaintiff alleges the following claims that will be addressed by their substantive nature since the constitutional violations are reiterated throughout each of the five causes of action:

(1)    *Due Process*

Plaintiff claims that Defendants violated his due process rights under the Fifth and Fourteenth Amendments because he was not provided with notice or information concerning his HRP classification and housing in disciplinary and segregation, and was denied reclassification and transfer to general population. (Paliotta II Doc. # 17 at ¶¶ 1-3, 5-13, 16-45, and 49.)

(2)    *Equal Protection*

Plaintiff claims that his equal protection rights were violated because his HRP classification and housing status caused him to be treated differently than other inmates in segregation as well as in the general population. He alleges that he was restricted in terms of visitation rights, had limited canteen and personal property privileges, was escorted surrounded by guards and shackled when leaving his cell.  He asserts that other former HRP inmates and inmates with murder convictions were allowed to go back to general population while Plaintiff was not. Plaintiff alleges that Defendants do not equally apply administrative regulations and internal operating procedures to similarly situated offenders who are not

Pacific Islanders and Buddhist.  Plaintiff also asserts that because of his segregated housing status, he was denied equal access to religious services and religious property.  Finally, he alleges that as a result of his housing status he was denied access to legal research, law clerks and the law library. (Paliotta II Doc. # 17 at ¶¶ 3-4, 29-30, 34, 40-41, 48-50.)

(3)   *First Amendment-Free Exercise*

Plaintiff alleges that he was denied his First Amendment right to free exercise of religion because inmates housed in administrative segregation did not have equal access to religious services and religious property, and he was not allowed to properly practice his faith. (Paliotta II Doc. # 17 at ¶ 15.)

(4)   *First Amendment-Retaliation*

Plaintiff alleges that his First Amendment rights were violated because Defendants retaliated against him.  Specifically, he alleges that Defendants did not equally apply administrative regulations and operating procedures in comparison to similarly situated offenders in retaliation towards Plaintiff because other inmates had been sent back to general population while Plaintiff was not. (Paliotta II Doc. # 17 at ¶¶ 30, 48.)

(5)   *First Amendment- Access to Courts*

Plaintiff alleges that his First Amendment right of access to courts was violated because while he was in administrative segregation he was not allowed to possess a typewriter and did not have physical access to the law library research materials, law clerks, instant legal copy reproduction, and Lexis Nexus computer access. (Paliotta II Doc. # 17 at ¶ 49.)  He also alleges that he was subject to cell searches which would frequently result in officers taking legal documents. (*Id.*, ¶¶ 34, 50.)

(6)   *Eighth Amendment*

Plaintiff alleges that his Eighth Amendment rights were violated as a result of his housing and classification status.  Specifically, he alleges that as a result of his segregated housing status, he was forced to be housed in a unit with mentally ill inmates which destroyed his mental health. (Paliotta II Doc. # 17 at ¶ 4.)  He further alleges that he was locked in his

11

1    cell for twenty-three hours a day, and was only allowed to shower every third day, and that his

2    confinement in segregation generally subjected him to the risk of long term emotional and

3    physical damage. (*Id.*) He alleges that he was severely deprived of activity and was forced to

4    kneel on the concrete while his shackles were affixed every time he left his cell. (*Id.*) Plaintiff

5    also alleges that on February 11, 2008, two guards searched his cell and when he questioned

6    why items were being confiscated, Plaintiff was assaulted. (*Id.* at ¶ 34.) Two days later, on

7    February 13, 2008, Plaintiff alleges that he was assaulted by one of the same guards while

8    being escorted to the shower. (*Id.* at ¶ 35.)

9    (7) *State Law Claims*

10        Plaintiff asserts that the foregoing conduct also violated his rights under the Nevada

11   Constitution, as well as NRS 209.371, NRS 212.010(1), and NRS 212.020. (Paliotta II Doc. #

12   17 at ¶¶ 59-70.)

13        a.    **Will rights or interests established in Paliotta I be destroyed or impaired by prosecution of Paliotta II?**

14

15        The order dismissing Plaintiff's complaint in Paliotta I established Plaintiff's failure to

16   state a claim, and allowing him to prosecute the same claims asserted in Paliotta I in Paliotta

     II would destroy the effectiveness of the dismissal and Defendants' interests therein.

17

18        b.    **Will the two actions involve presentation of same evidence?**

19        A review of the claims asserted in both actions reveals that substantially the same

20   evidence would necessarily be presented to support and defend the claims asserted in Paliotta

21   II. The court notes that Plaintiff's potential Eighth Amendment claim and First Amendment

     access to courts claim in Paliotta II may require the presentation of additional evidence.

22

23        c.    **Do the two actions involve infringement of the same rights?**

24        The court finds that by and large the two actions involve infringement of the same

25   substantive rights. Both actions allege violations of the following rights: (1) due process rights

26   as a result of Plaintiff's housing status and classification; (2) equal protection rights as a result

     of Plaintiff's housing status and classification; (3) First Amendment right to free exercise of

27

28                                                      12

1   religion; (4) retaliation in violation of Plaintiff's First Amendment rights; (5) First Amendment

2   right of access to courts; (6) Eighth Amendment right against cruel and unusual punishment;

3   and (7) state law claims.

4           **d.      Do the two suits arise out of the same transactional nucleus of facts?**

5           The two actions generally arise out of the same transactional nucleus of facts. As stated

6   above, the court does not focus on whether each allegation was actually asserted in the

7   previous action, but whether it "could have been brought" in that action. *Tahoe Sierra*

8   *Preservation Council, Inc.*, 322 F.3d at 1077-78. The only exception to this conclusion is that

9   Plaintiff raised additional potential claims under the Eighth Amendment and First

10  Amendment in Paliotta II that arose after he submitted his complaint in Paliotta I.

11          **i.      Due Process**

12          Plaintiff's due process allegations in Paliotta I and Paliotta II both center around

13  Plaintiff's housing status and classification and the denial of his transfer to general population

14  and removal of the HRP classification. (*See* Paliotta I Doc. # 7 at ¶¶ 1-26, Paliotta II Doc. #

15  17 at ¶¶ 1-3, 5-13, 16-45, and 48-49.) While Plaintiff includes a few additional allegations that

16  occurred subsequent in time to the allegations of due process violations in Paliotta I, the court

17  finds that this is an occasion where claim preclusion should bar these later events because they

18  are more akin to a series of wrongful acts constituting a single scheme. *See Carstarphen*, 594

19  F.Supp.2d at 1210.  In Paliotta II, Plaintiff simply asserts that he submitted additional

20  grievances and kites concerning his housing and classification status which he uses to support

21  his claim that he was deprived his due process rights by the denial of a transfer to general

22  population and reclassification. (*See* Paliotta II Doc. # 17 at ¶¶ 32-33, 36-45.) Therefore, the

23  court concludes that there is an identity between Plaintiff's due process claims in Paliotta I and

24  Paliotta II.

25  / / /

26  / / /

27

28                                                13

### ii.    Equal Protection

Plaintiff's equal protection allegations in Paliotta I centered around his claim that he was treated differently than inmates that were not housed in segregation and did not have the HRP classification. (*See* Paliotta I Doc. # 7 at ¶¶ 1-26.) In Paliotta II, Plaintiff reasserts his claim that his equal protection rights were violated as a result of his housing and classification status. (*See* Paliotta II Doc. # 17 at ¶¶ 3-4, 29, 48, and 49.) Plaintiff does include some additional factual allegations in Paliotta II, including: (1) other former HRP inmates and inmates with murder convictions were allowed to transfer to general population while Plaintiff was denied transfer (Paliotta II Doc. # 17 at ¶¶ 40-41); (2) administrative regulations and operating procedures were not applied to similarly situated offenders, who also did not happen to be Pacific Islander or Buddhist (*Id.* at ¶ 30); and (3) inmates housed in segregation did not have equal access to religious services and religious property as compared to those in general population *(Id.* at ¶ 15). The court finds that despite the addition of these facts, Plaintiff either did raise these claims or he could have raised them in Paliotta I. As to items (1) and (2), Plaintiff has simply stated additional facts to support his claim that he was treated differently than inmates who were not in segregation. Plaintiff was certainly aware of his status as a Pacific Islander and Buddhist at the time he filed his complaint in Paliotta I. As to item (3), Plaintiff did allege that as a result of his housing status and classification, he was not given equal access to religious services and property. (Paliotta I Doc. # 7 at ¶ 31.) Therefore, claim preclusion applies to Plaintiff's equal protection claims. To the extent Plaintiff included additional allegations regarding grievances and kites submitted post-Paliotta I, this does not defeat preclusion for the reasons stated above with respect to Plaintiff's due process claim.

### iii.    First Amendment-Free Exercise of Religion

Although Plaintiff did not include nearly as many facts to support this claim in Paliotta I, Plaintiff did assert that as a result of his placement in segregation, he did not have the same access to religious services and property as inmates in general population. (Paliotta I Doc. # 7 at ¶ 31.) Therefore, Plaintiff's First Amendment free exercise claim in Paliotta II is

14

1  precluded.

2  ### iv.    First Amendment-Retaliation

3  Plaintiff generally alleges the same retaliation claims in Paliotta I and Paliotta II. While
4  Plaintiff adds an allegation in Paliotta II that he was retaliated due to his status as a Pacific
5  Islander and Buddhist, the actual retaliatory actions arise from the same transactional nucleus
6  of facts-Plaintiff's segregated housing status and classification.  Plaintiff was certainly aware
7  of his status as a Pacific Islander and Buddhist at the time he filed Paliotta I, and therefore
8  could have asserted these additional allegations at that time.  For this reason, the court finds
9  Plaintiff's retaliation claim is precluded.

10 ### v.    First Amendment-Access to Courts

11 In Paliotta I, Plaintiff alleged that he was denied legal research access as a result of his
12 housing status. (Paliotta I Doc. # 7 at ¶ 31.) Plaintiff makes similar allegations in Paliotta II,
13 and therefore there is an identity between these claims in both actions for preclusion purposes.

14 Plaintiff does make an additional potential claim of First Amendment access to courts
15 in Paliotta II; that legal documents were confiscated in connection with a February 11, 2008
16 search of his cell. (Paliotta II Doc. #17 at ¶ 34.) This allegation arises after Plaintiff submitted
17 his complaint in Paliotta I for filing, and should not be precluded.

18 ### vi.    Eighth Amendment

19 In both Paliotta I and Paliotta II, Plaintiff alleges an Eighth Amendment violation
20 arising from his segregated housing status and classification.  Therefore, there is an identity
21 of claims for preclusion purposes. Paliotta II, however, asserts an additional potential Eighth
22 Amendment claim based on two incidents where Plaintiff was allegedly assaulted in February
23 2008. (Paliotta II Doc. # 17 at ¶¶ 34-35.) These allegations arise after Plaintiff submitted his
24 complaint in Paliotta I for filing, and are therefore not precluded.

25 ### vii.    State Law Claims

26 Plaintiff asserts state law claims arising from his segregated housing status and
27 classification in both actions which should be precluded.  To the extent Plaintiff asserts

28                                                                15

1   violations of state law based on the assault incidents and confiscation of legal papers that

2   allegedly took place in February 2008, these potential claims should not be precluded.

3          **3.    Identity or Privity of Parties**

4          Defendants recognize that Plaintiff only named Defendants McDaniel and Skolnik in

5   Paliotta I, and names those defendants as well as Defendants Endel, Brooks, and Cox in

6   Paliotta II. (Doc. # 23 6.) Defendants argue that the added defendants were named based on

7   actions taken as NDOC employees and therefore there is privity for claim preclusion purposes.

8   (*Id.*)  Plaintiff does not appear to dispute that there is privity between the defendants in

9   Paliotta I and Paliotta II.

10         For res judicata to apply, the parties must be identical or there must be some sort of

11  privity between them. *Owens*, 244 F.3d at 713. The Ninth Circuit has defined privity in the

12  res judicata context as "a legal conclusion 'designating a person so identified in interest with

13  a party to former litigation that he represents precisely the same right in respect to the subject

14  matter involved.'" *In re Schimmels*, 127 F.3d 875, 888 (9th Cir. 1997) (quoting *Southwest*

15  *Airlines Co. v. Texas Int'l Airlines, Inc.*, 546 F.2d 84, 94 (5th Cir. 1977)).

16         Because McDaniel and Skolnik were named in Paliotta I and Paliotta II, there is no

17  question that claim preclusion applies to them, with the exception of the claims noted above

18  that arose after Plaintiff submitted his complaint in Paliotta I. At issue is whether there is

19  privity with Defendants Endel, Brooks, and Cox in Paliotta II.

20         Although Plaintiff added three additional defendants in Paliotta II, the defendants in

21  both actions are current or former employees of NDOC sued for actions taken as NDOC

22  employees. For this reason, the court finds there is privity between the defendants in Paliotta

23  I and Paliotta II. *See Funds for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1398 (9th Cir. 1992

24  (citing *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402-03 (1940) (finding that

25  privity exists between officers of the same government so that a judgment in a suit between

26  a party and a representative of the government is res judicata in relitigation of the same issue

27  between that party and another officer of the government)).  Therefore, the court finds that

28                                          16

1  this prong of the claim preclusion analysis has been satisfied.

2        In conclusion, the court finds Plaintiff is precluded from relitigating all but the claims

3  arising from his allegations concerning the two assault incidents and alleged confiscation of

4  legal papers that occurred in February 2008. The potential claims that may be pursued are

5  therefore limited to the following: (1) an Eighth Amendment claim arising from the alleged

6  incidents of assault; (2) a First Amendment access to courts claim arising from the alleged

7  confiscation of legal papers during the February 2008 search of his cell; and (3) any alleged

8  violations of state law relating to the February 2008 assault and confiscation of legal

9  paperwork incidents.

10 **C.**    **PERSONAL PARTICIPATION**

11       The only claims that are not precluded under the court's analysis above are those that

12 arise from Plaintiff's allegations of two incidents of assault and search of his cell that occurred

13 on February 11 and February 13, 2008. (Paliotta II Doc. # 17 at ¶¶ 34-35.)

14       A claim brought under 42 U.S.C. § 1983 requires a specific relationship between the

15 actions of the defendants and the deprivation alleged to have been suffered by Plaintiff.

16 *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976).

17 The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a

18 constitutional right, within the meaning of § 1983, if he does an affirmative act, participates

19 in another's affirmative acts, or omits to perform an act which he is legally required to do that

20 causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743

21 (9th Cir. 1978)(citation omitted).

22       In addition, supervisory personnel are generally not liable under § 1983 for the actions

23 of their employees under a theory of *respondeat superior*. When a named defendant holds

24 a supervisory position, the causal link between him and the claimed constitutional violation

25 must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher*

26 *v. Saalfield*, 589 F.2d 438, 441 (9th Cir. 1978). Plaintiff must allege facts that a supervisory

27 defendant either: personally participated in the alleged deprivation of constitutional rights;

28                                       17

1  knew of the violations and failed to act to prevent them; or promulgated or implemented a

2  policy "so deficient that the policy itself is a repudiation of constitutional rights" and is "the

3  moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.

4  1989); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

5          On February 11, 2008, Plaintiff alleges that two guards, who he specifically declines to

6  identify, performed a search of his cell, and when Plaintiff questioned them about items being

7  confiscated they pushed him into a metal railing and slammed him to the ground, pummeling

8  him repeatedly. (Paliotta II Doc. # 17 at ¶ 34.)  Plaintiff alleges that legal paperwork was

9  confiscated during this search. (*Id.*)  Plaintiff alleges on February 13, 2008, while being

10  escorted to the shower, one of the unidentified guards that was involved in the February 11,

11  2008 incident, assaulted Plaintiff by slamming him to the concrete ground and grabbing his

12  hair and slamming his head into the ground and kneeing him in the groin repeatedly. (*Id.* at

13  ¶ 35.)

14          Plaintiff specifically declines to identify the guards who allegedly assaulted him and

15  confiscated his legal paperwork in February 2008.  In addition, Plaintiff fails to allege any

16  facts connecting any of the named defendants with the remaining alleged constitutional

17  violations.  Moreover, there are no allegations that would serve to establish a causal link

18  between any named defendant in a supervisory position to the claimed constitutional

19  violations. Accordingly, the court should dismiss Plaintiff's remaining constitutional claims,

20  not barred by claim preclusion, without prejudice.

21  **D.      REMAINING STATE LAW CLAIMS**

22          To the extent Plaintiff asserts any remaining state law claims that the are not precluded,

23  the court should exercise its discretion to dismiss them without prejudice. "When, as here, the

24  court dismisses the federal claim leaving only the state claims for resolution, the court should

25  decline jurisdiction over the state claims and dismiss them without prejudice." *Les Shockley*

26  *Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 509 (9th Cir. 1989).

27  / / /

28                                                    18

# IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **GRANTING** Defendants' Motion to Dismiss (Doc. # 23) as follows:

All of Plaintiff's claims asserted in Paliotta II are dismissed with prejudice as to all named Defendants as a result of claim preclusion, except that:

    (1)    Plaintiff's potential Eighth Amendment claim arising from the February 11 and 13, 2008 alleged incidents of assault is dismissed without prejudice because Plaintiff fails to link any named Defendant with the alleged constitutional violations;

    (2)    Plaintiff's potential First Amendment claim of access to the courts arising from the February 11, 2008 search of his cell is dismissed without prejudice because Plaintiff fails to link any named Defendant with the alleged constitutional violations;

    (3)    Plaintiff's potential state law claims under the NRS arising from the February 11 and 13, 2008 alleged incidents of assault are dismissed without prejudice because the court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

The parties should be aware of the following:

1.    That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt.  These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

/ / /

/ / /

/ / /

19

2.     That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED:  February 3, 2011.

_____
UNITED STATES MAGISTRATE JUDGE

20